UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DOBBS & NEIDLE, P.C.,
a Michigan Professional Corporation,

    Plaintiff,

v.                                                                                    Case No. 2:13-cv-10389

                                                           Hon. Marianne O. Battani

EPIC MEDIA GROUP, LLC, a Delaware
Limited Liability Company,
EPIC MEDIA GROUP, INC.,
a Delaware Corporation,
AZOOGLE.COM, INC., a Delaware
Corporation and AZOOGLEADS US, INC.,
a Delaware corporation, both d/b/a
AZOOGLEADS.COM, INC., jointly
and severally,

    Defendants.

**DOBBS & NEIDLE, P.C.**
By: Gregory R. Neidle (P59273)
Daniel J. Ammon (P50923)
Attorney for Plaintiff
30150 Telegraph Road
Suite 410
Bingham Farms, MI 48025
Phone: (248) 723-9511
Fax: (248) 723-9531

**PLAINTIFF'S EX PARTE MOTION TO
FILE SECOND AMENDED COMPLAINT**

    DOBBS & NEIDLE, P.C., by its attorneys, for its Ex Parte Motion to File

Second Amended Complaint against the Defendants, states as follows:

    1.    In May 2011, Defendants Epic Media Group, Inc., Azoogleads US,

Inc., and Azoogle.com, Inc. ("Epic") retained Plaintiff, Dobbs & Neidle, P.C. to represent it in a lawsuit in this Court, styled as *Quicken Loans v. Epic Media Group, Inc. et al.*, Case No. 2:11-cv-11567 (the "lawsuit").

2. Plaintiff represented Epic through the course of the lawsuit, which culminated in a Consent Judgment entered on November 7, 2012.

3. During the lawsuit, Epic deliberately and without justification, avoided paying for its legal fees incurred.

4. On January 31, 2013, Plaintiff filed its initial Complaint against Epic for payment of legal fees and expenses with regard to the lawsuit.

5. On February 1, 2013, while investigating Epic's resident agent, Plaintiff learned that Epic the State of Delaware had no resident agent listed for "Epic Media Group, Inc.", even though Epic admitted to its incorporate status in pleadings.

6. However, the State of Delaware listed an entity known as "Epic Media Group, LLC" as incorporated in Delaware with the same resident agent that Epic Media Group, Inc. previously held out to have.

7. Plaintiff also discovered a Federal Trade Commission ("FTC") agreement online at http://www.ftc.gov/os/caselist/1123182/121205epicorder.pdf between the FTC and Epic Media Marketplace, Inc. and Epic Media Group, LLC. (**Exhibit 1**).

8. The agreement listed Epic Media Group, LLC's principal office and place of business at 512 7th Ave, 12th Floor, New York, NY, 10018. This is the same address Plaintiff utilized to contact Defendants in the underlying lawsuit.

9. Based on this new information, on February 1, 2013, Defendant filed its First Amended Complaint naming "Epic Media Group, LLC" as an additional Defendant.

10. Even more significant, Plaintiff recently learned that Epic Media Group, Inc., has apparently engaged in a scheme to avoid paying its creditors and has formed another company called "Social Assets, LLC", doing business as "Kinetic Social", with virtually the same management team as Epic Media Group, Inc. and have apparently also transferred its assets there.

11. These allegations have been brought to light in a lawsuit against Epic in the U.S. District Court for the Western District of Wisconsin, *Essociate, Inc., v. Azoogle.com, Inc. and Epic Media Group, Inc.*, Case No. 3:11-cv-00727.

12. In *Essociate*, the Plaintiff filed a Motion for Leave to File Amended Complaint [*Id.*, Doc. 47] and Brief and Declaration in Support [*Id.*, Docs. 48, 49] requesting the Court to allow it to add Social Assets, LLC and unnamed Does 1-10 as Defendants on the grounds that Social Assets and the unnamed entities are successor entities to and/or an alter egos of Epic Media Group, Inc. *Id.* (Motion, Brief and Declaration attached hereto as **Exhibit 2**).

13. *Essociate*'s based its allegations on the following facts:

> This lawsuit was filed in October 2011. (*See* Dkt. No. 1). The following month, Social Assets was formed and began doing business as "Kinetic Social", which was previously an internal division of Epic. (*See* Linke Decl., Ex. A.)
>
> Kinetic Social is now operated by Epic's former management:
>
> ● Don Mathis was Epic's President and CEO. He is now Kinetic Social's CEO. He joined Kinetic Social in 2011. (Linke Decl. at ¶ 7, Ex. F.)

● Rick Okin was Epic's CIO and now fills the same role at Kinetic Social. He joined Kinetic Social in October 2011. (*Id.*, Ex. G.)

● Stephen McDermott was Epic's Senior Account Executive. He is now the Director of Social Media at Kinetic Social. Interestingly, he remained at Epic until November 2011 even though he joined Kinetic Social a month earlier. (*Id.*, Ex. H.)

● Paul Biondi was the Manager of Creative Services at Epic and took over the same role at Kinetic Social in October 2011. (*Id.*, Ex. I.)

● Charlie Nowaczek was Epic's COO and is now the COO at Kinetic Social. (*Id.*, Ex. J.)

● Nate Armstrong was Epic's Vice President of Sales and is now Kinetic Social's Director of Sales. (*Id.*, Ex. K.)

On June 6, 2012—Essociate learned from the online publication Performance Industry Insider that Epic is refusing to pay its debts and directing its clients to pay Kinetic Social instead of Epic:

[A]lmost a year ago the executives knew that the company was eventually going to go out of business. They were so certain the company was in trouble that all the executives of the company left Epic Media Group, took the profitable social media assets and turned it into another company called Kinetic Social. Same CEO, same clients, same executive staff. ...according to former clients of Epic, Kinetic Social is now working for them and billing them under the new name. Yes, you heard that – they are billing former Epic clients, according to an insider I spoke with, and telling them to pay Kinetic Social instead of Epic.
(Linke Decl. at ¶ 8, Ex. L.)

A debt workout specialist recently issued a letter on Epic's behalf detailing Epic's plans to confront its massive debts without filing for bankruptcy. (*Id.* at ¶ 9, Ex. M.) Another recent Performance Industry Insider article reported that Epic's board of directors has been discussing filing for bankruptcy. (*Id.* at ¶ 10, Ex. N.) Epic's financial difficulties continued to mount. The week after the June 6, 2012 Performance Industry Insider article was published—on June 15, 2012—the United States District Court for the Eastern District of Michigan granted a $ 3.5 million judgment against Epic's wholly-owned subsidiary Connexus Corporation, as well as the related entities Firstlook, Inc., and Navigation Catalyst Systems, Inc. (Linke Decl. ¶¶ 11– 12, Ex. O and Ex. P at ¶¶ 2-3.)

Based on these facts, Essociate infers that Epic's management has long been aware of Epic's financial difficulties and that Epic has transferred and continues to transfer its assets to Kinetic Social outside the ordinary course of business, for the purpose of avoiding Epic's debts to current creditors as well as Epic's liability to potential creditors such as Essociate.

(See Exhibit 2, p.3).

14. On September 13, 2012, the Wisconsin U.S. District Court granted Essociate's motion and permitted it to file an amended complaint. (**Exhibit 3**).

15. Moreover, as Plaintiff in this case theorized, (and the reason Plaintiff filed its first amended complaint) Epic has admitted in *Essociate* pleadings that Epic Media Group, Inc. has been restructured into Epic Media Group, LLC. (Doc. 55, Declaration of David Graff, attached hereto as **Exhibit 4)**.

16. As outlined in the *Essociate* matter, and as set forth in the alleged corporate structure concerning Epic Media in the declaration of David Graff, there are other individuals or entities acting as Epic's alter egos.

17. Based on evidence offered in the *Essociate* case, there is support indicating that Social Assets, LLC is continuing Epic's business as its successor or alter ego.

18. Accordingly, Plaintiff's Second Amended Complaint will add Social Assets, LLC and Does 1- 10, representing other individuals or entities acting as Epic's alter egos, as additional Defendants.  (**Exhibit 5**).

WHEREFORE, Plaintiff requests that this Court allow it leave to file a Second Amended Complaint in this matter.

                                        Respectfully submitted,

Dated:  February 5, 2013        /s/ Daniel J. Ammon
                                             DOBBS & NEIDLE, PC
                                             30150 Telegraph Road, Suite 410
                                             Bingham Farms, MI 48025
                                             Phone:  (248) 723-9511
                                             Email:  dammon@dobbsneidle.com
                                             MI Bar Number P50923
                                             Attorney for Plaintiff

### BRIEF IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION TO FILE SECOND AMENDED COMPLAINT

### Standard for Leave to Amend

Under the Federal Rules, leave to amend should be freely granted. In specific, F.R.Civ. P. Rule 15(a) directs the court to allow the amendment when justice so requires:

> "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

F.R.Civ. P. Rule 15(a). This rule has been further explained by the Supreme Court in *Foman v. Davis*, 371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962), where the court the advised that only a limited set of improper reasons for the amendment should be the basis of a denial of leave to amend:

> . . . if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim of the merits. In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given.

*Foman*, 371 U.S. 178 at 182. Thus, leave to file an amended complaint should be freely given, and should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the nonmovant, or futility. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 519 (6th Cir. 2001); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222,

83 S. Ct. 227 (1962)), cert. denied, 120 S. Ct. 1423 (2000). Further, delay alone does not justify denial of the motion to amend. *Security Ins. Co. of Hartford v. Kevin Tucker & Assocs., Inc.*, 64 F.3d 1001, 1009 (6th Cir. 1995). And, before denying such a motion, a court must find at least some significant showing of prejudice to the opponent. *Duggins v. Steak ' N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999). And as a general proposition, the Sixth Circuit is 'very liberal' in permitting amendments. *United States ex rel American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 550 (S.D. Ohio 1998), aff'd. 190 F.3d 729 (6th Cir. 1999).

## Analysis

As set froth above, Plaintiff seeks to amend its Complaint to add additional parties.  At this time, no party has been served with the Complaint.  This case is at its initiating stage and as such, there is no basis for a denial of Plaintiff's requested relief.  Accordingly, Plaintiff requests that the Court grant it leave to file the amended complaint attached as Exhibit 5.

                                        Respectfully submitted,


Dated:  February 5, 2013            /s/ Daniel J. Ammon
                                    DOBBS & NEIDLE, PC
                                    30150 Telegraph Road
                                    Suite 410
                                    Bingham Farms, MI 48025
                                    Phone:  (248) 723-9511
                                    Email:  dammon@dobbsneidle.com
                                    MI Bar Number P50923
                                    Attorney for Plaintiff