IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| ESSOCIATE, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:11-cv-00727-bbc |
| | § | |
| AZOOGLE.COM, INC., and | § | |
| EPIC MEDIA GROUP, INC., | § | |
| | § | |
| Defendants. | § | |

## DECLARATION OF DAVID GRAFF

I, David Graff, do hereby declare and state as follows:

1.  I am general counsel of the defendant in this case, Epic Media Group, Inc., formerly known as Azoogle.com, Inc. I make this declaration in response to Essociate's motion for leave to amend its complaint to allege claims against Social Assets, LLC, which does business under the name Kinetic Social. This declaration is based on my personal knowledge, acquired in my role as general counsel to FAS Labs, Inc., the ultimate parent company of both Epic Media Group and Social Assets.

2.  Essociate's motion contains numerous factual inaccuracies concerning the relationship between Epic Media and Social Assets, as well as other matters.

3.  Social Assets is not a continuation of Epic Media.

4.  Social Assets operates a different line of business than Epic Media. Epic Media operated an internet "affiliate network". The purpose of the affiliate network was to use a large number of independent internet marketers, such as web site owners, search engine marketers, electronic mail publishers, and internet advertising placement services, to direct internet users to

internet advertisers (e.g., online retailers). The internet advertisers pay Epic Media a fee associated with the advertising placement, and Epic Media in turn pays the particular independent marketer. Social Assets does not operate an affiliate network. Social Assets assists brand advertisers and advertising agencies with "audience engagement", i.e., promoting discussions and interaction between brands and potential customers through social media platforms such as FaceBook and Twitter. The client bases of the two businesses are substantially distinct, although a few companies who had been clients of Epic Media may use the services of Social Assets.

5. In particular, Epic Media is not directing clients who owe it money to pay that money to Social Assets. This statement in Essociate's motion is completely false.

6. Epic Media Group has been very open about its financial troubles, and about the fact that it is having trouble meeting its financial obligations. Epic Media Group has engaged the services of a debt workout specialist, Accord Associates, a fact that was openly disclosed on the Epic Media website. The affiliate network business has not met expectations and Epic Media is attempting to meet its obligations as best it can in a responsible way. In the process, Epic Media has been significantly downsized to reduce costs.

7. Social Assets is a separate corporate entity from Epic Media. Social Assets, LLC is a wholly owned subsidiary of Emerald Social, LLC, which is, in turn, a subsidiary of Fas Labs, Inc. Epic Media Group, Inc. has been restructured as Epic Media Group, LLC, and it, too, is a wholly owned subsidiary of FAS Labs, Inc. Attached as Exhibit A is a true and correct copy of a chart of the FAS Labs, Inc. corporate structure. The corporate structure shown in Exhibit A was begun in November 2011 and completed by February 2012.

2

8. As Epic Media has been downsized, certain of its employees and officers have taken positions with Social Assets. Other employees of Social Assets have joined the company from other unrelated internet marketing businesses. Absolutely no assets of any kind have been transferred from Epic Media to Social Assets. Social Assets maintains a separate payroll and has a separate tax identification number from Epic Media. The purpose of the corporate restructuring, and the creation of Social Assets, was not to avoid payment of Epic Media's obligations.

9. Epic Media acquired Connexus Corporation, another internet affiliate marketing firm, in 2010. At the time of the acquisition, Connexus Corporation was already the subject of a lawsuit which had been filed in 2008. The stipulated judgment against Connexus Corporation was the result of a confidential settlement agreement that terminated that litigation. Although that litigation contributed to the financial difficulties of Epic Media, Epic Media intends to meet the terms of the settlement. The creation of Social Assets, which occurred well before the stipulated judgment, does not reflect any intent to avoid the payment of any obligation of Epic Media Group.

10. "Pace Lattin," the author of the blog posts submitted with Essociate's motion, does not work for Epic Media, nor has he ever worked for Epic Media (in any capacity). He does not have any access to information about Epic Media Group that is not available to the general public, and thus his claim to have information from "insiders" is incorrect. His blog posts, replete with grammatical and spelling errors, are filled with inaccurate statements and wild speculation about our operations and corporate structure. In particular, his statement that Epic Media has fraudulently conveyed assets to Social Assets is entirely false.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated this August 20, 2012.

_____
David Graff

8333045_2

4

Exhibit A

